ORIGINAL

RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUL 13 2016

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LACARSHA GAY,                              )
                                           )
Plaintiff                                  )
                                           )
v.                                         )     No._____
                                           )     1:16-CV-2539
COBB COUNTY, GEORGIA,                      )
COBB COUNTY POLICE DEPT.                   )
OFFICERS MC MADDEN, and                    )
MOORE, and SERGEANT DORSEY                 )
in their individual capacity,              )
                                           )
Defendants.                                )
_____)

**COMPLAINT**

**JURISDICTION AND VENUE**

This action arises under the authority vested in this Court by virtue of 42

U.S.C. § 1983, 42 U.S.C. § 1985, 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28

U.S.C.

§ 1367 (pendant jurisdiction). Venue is proper in this Court.

**PARTIES TO THIS SUIT**

Name, address, and phone number of Plaintiff:

LaCarsha Gay
4838 Hidden Creek Place
Decatur, GA 30035
Ph. (404) 798-6807

Name of each defendant, his official position, his place of employment, his mailing address, and phone number:

Defendant #1
Cobb County, Georgia
100 Cherokee Street
Marietta, GA 30060-9679

Defendant #2
Robert Dorsey, Sergeant
Cobb County Police Department
140 North Marietta Pkwy
Marietta, GA 30060

Defendant #3
MC Madden, Officer
Cobb County Police Department
140 North Marietta Pkwy
Marietta, GA 30060

Defendant #4
Moore, Officer
Cobb County Police Department
140 North Marietta Pkwy
Marietta, GA 30060

Defendant # 5
Cobb County Police Department
Municipality
140 North Marietta Pkwy
Marietta, GA 30060

# FACTUAL ALLEGATIONS

*Pro se* Plaintiff LaCarsha Gay (hereinafter "Ms. Gay") hereby brings this Complaint seeking damages and declaratory and injunctive relief for the violations of her First and Fourth Amendment rights under the United States Constitution and corollary rights under the Georgia Constitution, and for her false imprisonment, false arrest, malicious prosecution and harassment by Cobb County Police for claims stemming from the Cobb County Police Department's unlawful and overzealous response to a 911 call about a physical altercation between Ms. Gay and her live-in boyfriend and the father of her child, Daniel Garcia.

On July 16, 2014, Cobb County 911 received a call from Ms. LaCarsha Gay, reporting that she needed assistance because Mr. Garcia, who was acting belligerently, had pulled her hair and attacked her and that she wanted him to leave her apartment. Cobb County 911 also received a phone call from Ms. Gay's neighbor, Ms. Natisha – Wilson Moore, who called 911 because she could hear the physical dispute going on in Ms. Gay's apartment and "was concerned for Ms. Lacarsha [Gay] and her child's safety." In the 911 tape, Ms. Gay's neighbor reported that it sounded like Ms. Gay was "being beat up," she could hear Ms. Gay's daughter crying in the apartment , and she could hear Ms. Gay demand that Mr. Garcia leave. In the call, Ms. Moore "never saw or stated that [she] [saw] Ms. Lacarsha [Gay] hit" anyone. Because no one responded to the initial 911 calls, both Ms. Gay and Ms. Moore called 911 a second time.

At approximately 1:30 p.m., Officers Moore and Madden and Sergeant Dorsey arrived at Ms. Gay's apartment complex. According to the police report, when Officer Madden arrived at the apartment, he saw a young girl crying outside. The girl told the officers that her parents had been fighting and that she didn't want her father to go to jail. The officers asked the girl where she lived, and she showed them to her mother's apartment. When Officer Madden knocked on the door, Ms. Gay answered and informed the officers that Mr. Garcia, who did not live in the apartment, had "left already." She gave the officers a detailed description of Mr. Garcia and explanation of how he reacted when she told him to leave her apartment, including grabbing her hair. She also state that he could not have gone far because he did not have a car.

According to the police report, Ms. Gay's nine –year-old daughter, Kyra Garcia, walked past the officers into the apartment. At that point, the officers noticed a scratch on her face and asked what happened. The young girl responded, "Daddy did it." The officers continued to try and question Kyra, but Ms. Gay was said to have interrupted, protesting that they were scaring her child. Thereafter, apparently because Ms. Gay's neighborhood is known for drug activity, the officers asked Ms. Gay if there were guns or drugs in the apartment and asked to search her home. Ms. Gay refused, protesting that the officer should be looking to arrest Mr. Garcia, rather than asking her about drugs and weapons. The police

officers started to enter her home, but she protested that they were breaking the law and asked them why they needed to search her apartment. Instead of explaining why they needed to search her apartment, the officers walked back outside to the threshold of her front door, asked her what she was hiding, and indicated that a search warrant was on the way.

Although the officers omitted any reference to the search warrant conversation in their police report, there is an indirect reference and apparent admission that the officers entered Ms. Gay's residence without her permission. Specifically, the police report states that Ms. Gay began yelling obscene language and told the officers that "it was against the law for [the officer] to come inside her residence." According to the police report, when Ms. Gay tried to close the door, Officer Moore stepped in the doorway and informed her that the officers "were not leaving until [they] investigated the incident and obtained everyone's information to write a report." The reporting officer reported that Ms. Gay stated "fuck you" and told officers to "get the fuck out of [her] house." At this point, a small crowd had gathered outside of Ms. Gay's apartment. The officers told Ms. Gay that she "could not use obscene and offensive (*sic*) while there was a group of people and small children present." Ms. Gay responded that she was an adult and could say whatever she wanted in her home. Of course, Ms. Gay was correct as "[t]he freedom of individuals verbally to oppose or challenge police action without

thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." Skop v. City of Atlanta, 485 F. 3d 1130, 1139 (11th Cir. 2007).

Angered by Ms. Gay's "cussing and calling everyone name," Officer Madden told Ms. Gay "to place her hands behind her back because she was under arrest." The officer conceded that *he decided to arrest Ms. Gay "because [she] continued to yell obscene and offensive language while neighbors were outside Gay's residence with small children."* Officer Madden also reports that he "grabbed [Ms. Gay] by the left wrist" and that Officer Moore "grabbed her other wrist" and "pulled her outside" of her apartment. Then, despite Ms. Gay's protest that the situation was outrageous, Officer Moore and Sergeant Dorsey forcefully twisted her arms behind her back and handcuffed her. Ms. Gay's young daughter, who was screaming and crying while her mother was being arrested, followed Ms. Gay to the police car. Detective Wells of the Domestic Violence Unit arrived on the scene some time later and took custody of Ms. Gay's daughter.

According to Ms. Gay and her neighbor, Juanita Wilson, the police report does not reflect the truth of what actually occurred. Ms. Wilson heard the officers tell Ms. Gay she was an "unfit parent" and "call[ed] her names." There are numerous other discrepancies between what the officers reported and what actually

happened. Nevertheless, what is admitted is sufficient to show an unconstitutional entry into Ms. Gay's home, unlawful arrest, and excessive force.

Before formally charging Ms. Gay, the officers eventually found Mr. Garcia, who they claim told them that Ms. Gay *accidentally* scratched his neck. Mr. Garcia also emphatically told Officer Madden that Ms. Gay did *not* hit (or scratch) him or their daughter. He also signed a victim statement to the same effect.

Despite this, according to the criminal warrant, Ms. Gay was arrested on five counts: simple battery – insult/provoke in violation of O.C.G.A § 16-5-23(a)(1); cruelty to a child in the third degree in violation of O.C.G.A. § 16-5-70(d)(2); simple battery-physical harm in violation of O.C.G.A §16-5-23(a)(1); obstruction in violation of O.C.G.A. § 16-10-24(a); and disorderly conduct for use of obscene language in violation of O.C.G.A. § 16-11-39(a)(4). To the extent that the defendants will argue that Ms. Gay was arrested for obstruction, there is no evidence to support such a charge. See Williams v. State, 305 Ga. App. 657, 658 n.5 (2010) (citing Beckom v. State, 286 Ga. App. 38, 41-42 (2007)) (evidence that the defendant did not answer the door when police officers knocked, did not answer the telephone when they called, and was verbally abusive to the officers was insufficient to support a conviction for obstruction of a police officer). In fact, all the charges against Ms. Gay were nolle prossed on March 4, 2015.

As explained more fully below, a person does not lose his or her constitutional rights for free speech – even offensive or profane – just because children are present. Even assuming that Ms. Gay used profanity in front of children, this cannot provide a basis for prosecution under O.C.G.A. § 16-11-39. See State v. Barnes, Case No. 12-M-3361 (Cobb County St. Ct., April 23, 2013).

After Ms. Gay's arrest, Officer Madden drove her to the Cobb County Adult Detention Center. At intake, Ms. Gay was informed that she was being charged with two counts of battery, cruelty to a child, obstruction of justice, and disorderly conduct and that her bond would be $10,000. Devastated and confused by the injustice she was facing, Ms. Gay began to cry. I was placed in a holding cell and not given any food for several hours.

Because Ms. Gay was unable to pay her exorbitant bond, she ultimately spent twenty-three days in jail. During that time, she was bullied by other inmates and was inappropriately touched by another inmate. After twenty-three days in these humiliating conditions, Ms. Gay was finally able to make bond by having her boyfriend pawn her jewelry, including a Mother's Day ring she had received from her daughter and a gold necklace her father had given her. On March 4, 2015, a Nolle Prosequi was entered in the State Court of Cobb County.

Ms. Gay's time in jail has had long-lasting repercussions, and she suffered serious damages as a result. During her arrest, she had to worry about what was going to happen to her daughter, who was taken into custody by an officer from the Domestic Violence Unit. DCFS had to place her child with a family member until October, and Ms. Gay did not see her daughter for almost three months. Ms Gay also lost an opportunity to start a new job at Wells Fargo because she was unavailable to begin on her start date. Additionally, her unlawful arrest has adversely impacted her criminal background, and, as a result, she was unable to find another job until October. Additionally, she had to pay $3,100 to a criminal attorney to defend her against the baseless charges.

The arrest and charges against Ms. Gay violated her civil rights. They were based solely upon her constitutionally protected speech and were an unconstitutional application of the statute by Cobb County, the Cobb County Police Department, Sergeant Dorsey, and Officers Madden and Moore. Her twenty-three days of detention in the Cobb County Adult Detention Center not only humiliated her, but also constituted additional violations of Ms. Gay's civil rights. As a result of all of the aforementioned conduct of the officers, she suffered – and continues to suffer from emotional distress. Indeed, she had to seek therapy to help her cope with anxiety she experienced after the arrest.

Many of the facts alleged in the police report and criminal warrant were false, and the undisputed facts demonstrate that Ms. Gay was arrested for her speech. Application of O.C.G.A. § 16-11-39 to Ms. Gay's comments – which did not constitute fighting words" as required by the statute, the United States Supreme Court, and Georgia precedent – is unconstitutional, so there was no probable cause for Ms. Gay's arrest. The Officers Madden, Moore, and Sergeant Dorsey made false allegations to justify an unconstitutional arrest.

**CLAIMS FOR RELIEF**

**COUNT ONE**

**VIOLATION OF THE FIRST AMENDMENT PURSUANT TO 42 U.S.C. § 1983 (Statute is unconstitutional as-applied to Ms. Gay).**

The allegations of the paragraphs above are incorporated into the First Claim for Relief as though fully set forth herein.

O.C.G.A. § 16-11-39(a)(3) prohibits the use of "fighting words," or "opprobrious" or abusive words which by their very utterance tend to incite to an immediate breach of the peace. Because Ms. Gay's use of profanity in this instance did not arguably rise to the level of "fighting words," application of the statute to her speech violated clear First Amendment rights.

The fact that the statute, as-applied to Ms. Gay, violated the First Amendment was clearly established law of which a reasonable law enforcement officer would have known. Indeed, the United States Supreme Court has held that under the First and Fourteenth Amendments, the government may not criminalize the "simple" utterance of a "single… expletive." Cohen v. California, 403 U.S. 15, 26 (1971). In violating Ms. Gay's rights under the First Amendment, Defendants Madden, Moore, and Dorsey directly and proximately caused her to suffer unlawful arrest, detention, search of her person, anguish, embarrassment, and humiliation.

Defendant Cobb County may be held liable for the violation of Ms. Gay's First Amendment rights pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978). Monell holds that a municipality can be sued for damages under 42 U.S.C. 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ***ordinance***, regulation or decision officially adopted by that body's officers." Id. at 659 (emphasis added).

Defendant Cobb County and its officers had a policy of arresting individuals under the disorderly conduct statute for cursing. This policy was subsequently implemented as the basis for Ms. Gay's unlawful seizure, arrest, imprisonment, and prosecution.

## COUNT TWO

## VIOLATION OF THE FIRST AMENDMENT PURSUANT TO

## 42 U.S.C. § 1983 (Retaliation)

The allegations of the paragraphs above are incorporated into the Second Claim for Relief as though fully set forth herein.

On July 16, 2014, Defendants Moore, Madden, and Dorsey actively initiated and procured the arrest of Ms. Gay in a criminal action in retaliation for her vocal protest and criticism of the County and its law enforcement.

Defendants Moore, Madden, and Dorsey acted without even arguable probable cause in initiating and procuring the arrest of Ms. Gay.

Defendants Moore, Madden, and Dorsey acted with malice in initiating and procuring the arrest of Ms. Gay.

Defendants Moore, Madden, and Dorsey's retaliatory acts violated Ms. Gay's rights under the First Amendment of the United States Constitution.

In violating Ms. Gay's rights under the First Amendment to the United States Constitution, Defendants Moore, Madden, and Dorsey directly and proximately caused her to suffer unlawful arrest, detention, search of her person, anguish, embarrassment and humiliation.

Defendant Cobb County may be held liable for the unconstitutional retaliation against Ms. Gay pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978) because Defendant Cobb County and its officers had a policy of arresting individuals under the disorderly conduct statute in retaliation for the use of profanity. This policy was subsequently implemented as the sole basis for Ms. Gay's unlawful seizure, arrest, imprisonment, and pre-trial seizure of liberty.

**COUNT THREE**

**VIOLATION OF THE FOURTH AMENDMENT PURSUANT TO 42 U.S.C. § 1983**

The allegations of the paragraphs above are incorporated into the Third Claim for Relief as though fully set forth herein.

Defendants Moore and Madden violated Ms. Gay's Fourth Amendment right to be free of unlawful search and seizure of the person by grabbing her wrists and pulled

her out of her apartment without even arguable probable cause to believe that she had committed a crime.

That there can be no arguable probable cause to arrest for a nonexistent crime was clearly established law of which a reasonable law enforcement officer would have known. That the reported crime was nonexistent follows from the fact that the application of the Disorderly Conduct statute to Ms. Gay's lawful conduct is unconstitutional.

Ms. Gay's arrest was objectively unreasonable.

In violating Ms. Gay's rights under the Fourth Amendment to the United States Constitution, Defendants Moore and Madden directly and proximately caused Ms. Gay to suffer unlawful arrest, detention, anguish, embarrassment and humiliation.

The overwhelming majority of minor code violations are dealt with by citation and not by arrest. The fact that Defendants Officers Moore and Madden used the most extreme measure – an unlawful detention of Ms. Gay's liberty – for such a minor action on the part of Ms. Gay's shows the true motivation of the named Defendants in this action.

Defendant Cobb County can be held liable for the violation of Ms. Gay's right to be free of unlawful seizure of her person pursuant to Monell v. Dept. of Soc. Serv., 436 U.S. 658 (1978) because it adopted a "policy" of unlawfully seizing and arresting individuals under the disorderly conduct statute simply for cursing.

## COUNT FOUR

## FALSE IMPRISONMENT

The allegations of the paragraphs above are incorporated into the Fifth Claim for Relief as though fully set forth herein.

Defendants Moore and Madden detained Ms. Gay when they deprived her of her liberty by grabbing her wrists and pulled her outside of her apartment, arresting her, and securing her in the back of a police car against her will without even arguable probable cause to believe that she had committed a crime.

The detention of Ms. Gay was unlawful because it occurred pursuant to a statute that, as-applied to Ms. Gay, is unconstitutional.

Defendants Officers Moore and Madden therefore falsely imprisoned Ms. Gay in violation of O.C.GA. § 16-5-41.

## COUNT SIX

**FALSE ARREST**

The allegations of the paragraphs above are incorporated into the Sixth Claim for Relief as though fully set forth herein.

Defendants Madden and Moore detained Ms. Gay when they deprived her of her liberty by grabbing her wrists and pulled her outside of her apartment, arresting her, and securing her in the back of a police car against her will without even arguable probable cause to believe that she had committed a crime.

The arrest of Ms. Gay was malicious because it was effectuated in direct retaliation for her exercise of her First Amendment right to free speech and in reckless disregard of her constitutional rights.

By maliciously arresting Ms. Gay under process of law, without probable cause, Defendants Officers Moore and Madden falsely arrested Ms. Gay in violation of O.C.GA. § 51-7-1.

**COUNT SEVEN**

**MALICIOUS PROSECUTION**

The allegations of the paragraphs above are incorporated into the Sixth Claim for Relief as though fully set forth herein.

Defendant Cobb County, by and through its agents, prosecuted Ms. Gay pursuant to a valid accusation for violating O.C.G.A. § 16-11-39(a)(3).

Defendant Cobb County, by and through its agents, further summoned Ms. Gay to pretrial court appearances under the threat of arrest for failure to appear, and levied five criminal charges against Ms. Gay, who had to retain private counsel.

Said pre-trial seizure of liberty was done with malice and without probable cause.

Defendant Cobb County, by and through its agents, continued to prosecute Ms. Gay despite being presented with the facts and the law, which clearly showed that the statute and ordinance were unconstitutional as applied to her speech and thus could not constitute a valid basis for prosecution.

Ultimately, the prosecution against Ms. Gay was terminated in her favor.

Defendant Cobb County, by and through its agents, thereby maliciously prosecuted Ms. Gay in violation of O.C.G.A. § 51-7-44.

**PRAYERS FOR RELIEF**

WHEREFORE, on the basis of the foregoing, Plaintiff prays that this Court:

(1) Enter an award of economic, compensatory, general, and special damages in an amount to be determined by the enlightened conscience of the jury against Defendants;

(2) Enter a preliminary and permanent injunction against Defendants, their officers, agents, successors, employees, attorneys, and those acting in concert with them, from any future, non-pending arrest or prosecution under the unconstitutional application of Georgia's Disorderly Conduct statute, O.C.G.A. § 16-11-39, to individuals who utter profanity that does not rise to the level of "fighting words";

(3) Award Ms. Gay punitive damages in the amount to be determined by the enlightened conscience of the jury against the individual Defendants;

(4) Grant to Ms. Gay a jury trial on all issues so Triable;

(5) Award to Ms. Gay the costs of the action and reasonable attorneys' fees, as provided by 42 U.S.C. § 1988 and federal and state law; and

(6) Grant any and all additional relief as this Court deems proper and just.

Signed this 13th day of July, 2016

Truly,

*Lacarsha Gay*

Lacarsha Gay
*Pro se* Litigant
4838 Hidden Creek Place
Decatur, GA 30035
Ph. (404) 798-6807