# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

LaCarsha Gay,

               Plaintiff,       Case No. 1:16-cv-02539

v.                       Michael L. Brown
                                  United States District Judge

Cobb County, Georgia, Officers
Madden, Moore, and Sergeant
Dorsey, in their individual
capacity,

               Defendants.

_____/

## OPINION & ORDER

Plaintiff LaCarsha Gay sued Cobb County police officers and Cobb County claiming they violated her constitutional rights while responding to a domestic dispute. Defendants moved for summary judgment on all claims. (Dkt. 47.) Defendants also moved to file documents under seal. (Dkt. 49.) Plaintiff then moved for partial summary judgment. (Dkt. 50.) The Court grants Defendants' motion for summary judgment and request to file documents under seal and denies Plaintiff's motion for summary judgment.

## I.    Background

Plaintiff has been in a relationship with Daniel Garcia for many years.  They have one daughter, known in this proceeding as KG.  (Dkt. 58-1 ¶¶ 83–84.)  At the time of the incident here, Plaintiff, Garcia, and KG lived in the same apartment.  (*Id.* ¶ 95.)  KG was eight years old.  (*Id.* ¶ 83.)  On the relevant day, Plaintiff and Garcia had a loud argument with each other.  (*Id.* ¶ 107.)  Their fight — apparently about who was going to use Plaintiff's car — stretched from their own apartment into the common area.  (*Id.*)  The fight became physical with Garcia grabbing Plaintiff by the hair.  (*Id.* ¶¶ 108–10, 114.)  At that point, KG tried to intervene to help her mother and was injured.[1]  (*Id.* ¶ 114.)

The two adults continued yelling and screaming at each other.  (*Id.* ¶ 116.)  Plaintiff, afraid for herself and her daughter, called 911.  (*Id.* ¶ 119.)  She asked the police to come to her apartment but ended the call abruptly.  (*Id.*)  The operator called her back and could hear Plaintiff arguing with another adult (later identified as Garcia).  (*Id.*)  The operator specifically heard Plaintiff say "you hit your daughter."  (*Id.*)

---

[1] Plaintiff said Garcia hit her, but KG later said her mother accidentally scratched her while falling.  (*Id.* ¶¶ 114–15.)

That call ended abruptly as well. (*Id.*) Plaintiff called police again, gave them the name of the apartment complex, and stated "please get here." (*Id.* ¶ 120.) She then said "he's here and he won't leave." (*Id.* ¶ 120.) The operator could hear Plaintiff continuing to argue with an unknown man (later identified as Garcia) and also heard KG crying in the background. (*Id.*) She did not tell the operator how the argument started but expressed concern she might get in trouble with police for fighting with her boyfriend. (*Id.* ¶¶ 121–22.)

One of Plaintiff's neighbors also called 911 to report the fight. (*Id.* ¶ 124.) The neighbor said that a man and woman were fighting and that a little girl was screaming and crying. (*Id.* ¶ 124.) The neighbor said the two adults fought "every day" but this was the worst she had ever heard. (*Id.* ¶ 124.) She called back a few minutes later and said it sounded like the woman was getting beat up by her boyfriend and the daughter was crying. (*Id.* ¶ 125.) The neighbor told the police to get there "fast." (*Id.*)

Defendant Officers Madden and Moore got to the apartment quickly. (*Id.* ¶ 127.) They knew someone in the apartment had called 911 twice, pleaded for urgent help, and said the alleged aggressor "won't leave." (*Id.* ¶ 130.) They did not know where the aggressor was or

whether he was still threatening the caller. (*Id.* ¶ 131.) They had received training in responding to domestic disputes. (*Id.* ¶ 30.) They knew that, when the police are called to investigate domestic disputes, one of the parties to the dispute will sometimes hide in the residence. (*Id.* ¶ 37.)

Officers Madden and Moore found KG in the parking lot. (*Id.* ¶ 132.) She was crying and seemed distraught. (*Id.*) She told them her parents had been fighting and led them to apartment 30C. (*Id.* ¶ 133–34.) Officer Madden could see abrasions and scratches on her face. (Dkt. 52 at 23:7–11.) KG said her daddy had done it. (*Id.*)

Plaintiff answered the door and told Officers Moore and Madden that the man she had been fighting with had already left. (Dkt. 58-1 ¶ 134.) The Officers asked to search the house, and Plaintiff told them no. (*Id.* ¶ 140.) The Officers thought Plaintiff appeared suspicious and Officer Moore stated, "we don't know who is inside." (*Id.* ¶ 143.)

Officer Moore took a few steps up the stairs into the apartment. (*Id.* ¶ 145.) Plaintiff protested, and Officer Moore went back down the stairs. (*Id.*) He put his foot in the doorway to keep the door open. (*Id.*)

The Officers asked Plaintiff to come outside so that they could interview her, but she refused, telling them the man had left. (*Id.* ¶ 147.)

At some point, KG walked past the Officers into the apartment with her mother. (*Id.* ¶ 149.) The Officers state they noticed a fresh scratch and abrasion near KG's right eye. (*Id.* ¶¶ 149, 164.) Plaintiff does not dispute the fact that the Officers noticed this injury but claims they would have seen KG's injuries when they spoke with her in the parking lot. (*Id.*) Either way, the Officers knew KG had been injured. Plaintiff refused to let the Officers speak with KG. (*Id.* ¶ 151.)

After talking to the Officers for about ten minutes, Plaintiff became frustrated, feeling the Officers "weren't focusing on [the] situation that they were called for." (*Id.* ¶ 152.) Plaintiff tried to close the door and Officer Moore kept his foot in it to prevent her from shutting the door. (*Id.* ¶ 153.) The Officers told her she could not shut the door because she was under investigation. (*Id.* ¶ 154.) Plaintiff got angry and started yelling and cursing at the Officers, saying she would close her "f@#$ door." (*Id.*) Plaintiff believed the police were not there to assist her but rather wanted to search her apartment for drugs or guns. (*Id.* ¶ 155.) She continued to curse when asked to stop because there were small

children around. (*Id.* ¶ 158.) During the argument, Officer Dorsey arrived at the scene. (Dkt. 54 at 24:3–24.)

The Officers tried to investigate for ten minutes but Plaintiff refused to provide pertinent information, kept yelling at the Officers, and remained uncooperative. (*Id.* ¶ 162.) She also refused to allow them to ask KG any questions, telling them to speak only with her. (*Id.* ¶ 164.) The Officers arrested Plaintiff for obstruction and disorderly conduct. (*Id.* ¶ 166; 43-6 ¶ 43.) She refused to comply with the Officers until she was in one of their police cars. (Dkt. 58-1 ¶¶ 168–70.)

Two other police officers found Garcia a few blocks away. (*Id.* ¶ 178.) He denied the argument had become physical, but officers saw bloody scratches on his neck. (*Id.* ¶ 179.) The Officers could not determine who was the primary aggressor and arrested both Plaintiff and Garcia. (*Id.* ¶ 180.) The Officers charged Plaintiff with obstruction, cruelty to child in the third degree, disorderly conduct, and simple battery. (*Id.* ¶ 189.) Plaintiff's bond was set at $10,000, an amount she could not pay. (Dkt. 3 at 8.) Police charged Garcia with simple battery and cruelty to children. (Dkt. 58-1 ¶ 181.) He pleaded guilty and spent twenty-two days in jail. (*Id.* ¶ 202.) Plaintiff remained in jail for twenty-

three days before the prosecutor dropped the charges. (*Id.* ¶ 209.) The prosecutor believed there was sufficient evidence to prosecute Plaintiff but dismissed because Plaintiff had already served twenty-three days in jail and the prosecutor wanted to cut her a break. (*Id.* ¶¶ 205–09.)

Plaintiff sued, alleging the Officers arrested her because she refused to let them come into her house and cursed at them. (Dkt. 3.) She asserted two Fourth Amendment claims (arrest without a warrant and illegal search and seizure) and three state tort law claims (false arrest, false imprisonment, and malicious prosecution).

## II.    Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "No genuine issue of material fact exists if a party has failed to 'make a showing sufficient to establish the existence of an element . . . on which that party will bear the burden of proof at trial.' " *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186–87 (11th Cir. 2011) (quoting *Celotex Corp. v. Catlett*, 477 U.S. 317, 322 (1986)). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial responsibility of asserting the basis for its motion. *Celotex*, 637 F.3d at 323. The movant is not, however, required to negate the nonmovant's claim. *Id.* at 324. Instead, the moving party may meet her burden by " 'showing' — that is, pointing to the district court — that there is an absence of evidence to support the non-moving party's case." *Id.* After the moving party has carried its burden, the non-moving party must present competent evidence that there is a genuine issue for trial. *Id.*

The court must view all evidence and factual inferences in a light most favorable to the non-moving party. *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48.

## III. Discussion

Defendant Officers moved for summary judgment on Plaintiff's federal claims saying they are entitled to qualified immunity. They also moved for summary judgment on the state law claims, saying they are entitled to official immunity. Plaintiff opposed those motions.

### A.    Federal Claims & Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (internal quotation marks omitted). So "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Qualified immunity allows officials to "carry out their discretionary duties without the fear of personal liability or harassing litigation." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). When properly applied, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 563 U.S. at 743 (internal quotation marks omitted).

Qualified immunity may attach only when the officer is "acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Grider v. City of Auburn*, 618 F.3d 1240, 1254 n.19 (11th Cir. 2010). A public official acts within the scope of his discretionary authority where the acts complained of were "undertaken pursuant to the performance of his duties and within the scope of his authority." *See Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir. 1988). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194. There seems to be no question that Defendants acted within the scope of their discretionary authority when arresting Plaintiff. *See, e.g., Wate v. Kubler*, 839 F.3d 1012, 1018 (11th Cir. 2016) (holding that officers acted within discretionary authority when arresting suspect). Plaintiff, thus, has the burden of showing that qualified immunity is unavailable to them.

The qualified immunity analysis presents two questions: first, whether the allegations taken as true establish the violation of a constitutional right; and second, if so, whether the constitutional right

was clearly established when the violation occurred. *Hadley v. Gutierrez,* 526 F.3d 1324, 1329 (11th Cir. 2008). These distinct questions "do not have to be analyzed sequentially; if the law was not clearly established, [the court] need not decide if the [d]efendants actually violated the [plaintiff's] rights, although [the court is] permitted to do so." *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011). The burden thus lies with Plaintiff to show that Defendants' actions violated a constitutional right and that the right was clearly established at the time of her arrest. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008).

### 1.    False arrest (Count 6)

### a.    Violation of a constitutional right

Plaintiff alleges the police arrested her without a warrant, making it unlawful. To be sure, a "warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996). On the other hand, the existence of probable cause is an absolute bar to a claim of unlawful arrest under the Fourth Amendment. *See Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003) ("An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest.").

An officer has probable cause to arrest "if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Carter v. Butts Cty.*, 821 F.3d 1310, 1319 (11th Cir. 2016) (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004)); *see also Boyd v. State*, 658 S.E.2d 782, 784 (Ga. Ct. App. 2008) (finding probable cause "if, considering the totality of the circumstances, at the time of arrest he had a reasonable belief that the defendant had committed a crime in his presence or within his knowledge" (internal quotation marks omitted) (alterations adopted)). The test for qualified immunity is not whether the officer actually had probable cause to support the arrest. The test is whether arguable probable cause exists. In other words, "[e]ven without actual probable cause . . . a police officer is entitled to qualified immunity if he had only 'arguable' probable cause to arrest the plaintiff." *Gates*, 884 F.3d at 1298.

Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge as the [defendant] *could* have believed that probable cause existed to arrest."

*Id.* (citing *Redd v. City of Enterprise*, 140 F.3d 1378, 1383–84 (11th Cir. 1998)). Arguable probable cause provides protection from both Fourth Amendment claims for false arrest and First Amendment claims stemming from an arrest. *Id.* at 1298; *see also Wilkerson v. Seymour*, 736 F.3d 974, 979 (11th Cir. 2013) ("[A]n arrest may be for a different crime from the one for which probable cause actually exists, . . . but arguable probable cause to arrest for *some* offense must exist in order for officers to assert qualified immunity from suit." (citations omitted)).

Based on the undisputed facts of this case, the Court finds that Defendant Officers Madden, Moore, and Dorsey had a reasonable belief that Plaintiff obstructed the police or committed cruelty to a child in the third degree.[2] Alternatively, even if they did not have probable cause to arrest Plaintiff, they had at least arguable probable cause — that is, the

_____

[2] The Officers also charged Plaintiff with disorderly conduct and simple battery. Since the Court finds the Officers had probable cause to arrest Plaintiff for obstruction and cruelty to a child in the third degree, the Court does not discuss the other charges. Moreover, although Defendant Madden testified they arrested Plaintiff for disorderly conduct, the relevant issue is whether they had arguable cause to arrest her for *any* offense, not merely the specific offense identified. *See Durruthy v. Pastor*, 351 F.3d 1080, 1089 n.6 (officer shielded by qualified immunity so long as probable cause to arrest plaintiff for any offense, not just claimed offense).

Court finds that a reasonable officer in the Officers' position could have believed he or she had probable cause to arrest Plaintiff for obstruction or cruelty to a child in the third degree.

### b. Probable cause for obstruction

Georgia law provides that "a person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties shall be guilty of a misdemeanor." GA. CODE ANN. § 16-10-24(a). Plaintiff obstructed the Officers from investigating KG's injuries. (Dkt. 58-1 ¶ 151.)[3] Upon arriving at the scene, the Officers knew they were investigating a claim of domestic violence and saw that KG had an abrasion on her face. (*Id.* ¶ 149.) Because this was a domestic abuse case, they could not simply turn their backs and leave. They had a duty to investigate her injuries and prepare a legally required Family Violence Report. *See* GA. CODE ANN. § 17-4-20.1(c) (requiring law enforcement officer investigating incident of family violence to prepare written report no matter if an arrest is made). The Officers had to determine, among other things, "[w]hether children were

---

[3] Plaintiff claims she was well within her rights to refuse to allow KG to speak to the Officers. Plaintiff does not dispute that she did not allow the Officers to talk to KG.

involved or whether the act of family violence was committed in the presence of children." *Id.* The Georgia Court of Appeals has made it clear that officers responding to a call involving possible family violence are required by law to conduct the investigation necessary to allow them to complete the Family Violence Report. *See Meagher v. Quick*, 594 S.E.2d 182, 186 (Ga. App. 2003) ("[T]he completion of a Family Violence Report was required upon an investigation broad enough to permit the same."). It has also held that "[w]arrantless arrests are lawful if the officer has probable cause to believe that an act of family violence, as defined in Code Section 19-13-1, has been committed. The OCGA § 19-13-1 definition of family violence includes battery." *McCracken v. State*, 480 S.E.2d 361, 363 (Ga. App. 1997) (quoting *Dennis v. State*, 469 S.E.2d 494, 495 (Ga. Ct. App. 1996)) (internal quotation marks and citations removed).

The Officers were responding to an incident of possible family violence. When Plaintiff first called the police, the operator could hear her and another adult arguing. Plaintiff asked the police to come quickly, saying she was afraid for herself and her daughter and that the man would not leave. The 911 operator heard Plaintiff say that someone had hit her daughter. The neighbor told the 911 operator that she heard

Plaintiff and a man arguing while their daughter was screaming and crying.[4] They also had reason to believe KG had not only witnessed the violence but been hurt as well. Officers Madden and Moore also found

---

[4] The Eleventh Circuit has not decided whether a 911 operator's knowledge is within the collective knowledge of officers responding to a scene. *United States v. Wehrle*, No. CR406-333, 2007 WL 521882, at *1 (S.D. Ga. Feb. 14, 2007). The Eleventh Circuit would likely include it here because the information was inherently reliable. The 911 operator here heard Plaintiff, in real time, ask for help and say "he's here and he won't leave." (Dkt. 58-1 ¶ 120.) These were excited utterances, commonly accepted as reliable. This information was reported immediately and provided detailed facts about potential domestic violence. The information was the report of events (domestic violence) that required an investigation, not merely a report of suspicious activity or other facts that need greater analysis to determine probable cause. *See United States v. Fernandez-Castillo*, 324 F.3d 1114, 1119 (9th Cir. 2003) (finding that the collective knowledge doctrine to include an emergency dispatch report because of the report's detail and the immediacy in which the report was called in); *but see United States v. Colon*, 250 F.3d 130, 135–36 (2nd Cir. 2001) (finding 911 operator's knowledge not within the collective knowledge of officers responding to a scene). But, even without considering the detailed information in the 911 call, Officers Madden and Moore had plenty of other information to establish at least arguable probable cause to believe someone had committed the crime of domestic violence. As they approached Plaintiff's door, they knew someone in the apartment called 911 twice, saying an aggressor was in the house and would not leave. (Dkt. 58-1 ¶ 130.) They did not know where that person was. (*Id.* ¶ 131.) And they had seen Plaintiff's daughter crying in the parking lot with a cut on her face. (Dkt. 52 at 23:7–11.) She then led them to Plaintiff's apartment. (*Id.*) And, Plaintiff did not deny the incident but rather insisted that the man had already left.

KG in the parking lot crying and upset. She told them her parents had been fighting and took them to the apartment. They even saw a fresh scratch and abrasion on the side of her head.

The Officers had a legal duty to investigate possible family violence. They told Plaintiff they were conducting this investigation. She does not dispute that. (Dkt. 58-1 ¶ 154.) She admits that she refused to allow them to speak with her daughter when she returned to the apartment, claiming they had a chance to speak with her in the parking lot. (*Id.* ¶ 151.) She had no right to tell the Officers how to do their job. She did not allow them to investigate the potential family violence, and her refusal provided the Officers (at the very least) arguable probable cause to believe she had obstructed their investigation. *See Wilson v. State*, 607 S.E.2d 197, 199 (Ga. Ct. App. 2004) (finding sufficient evidence for obstruction when defendant cursed at officers, refused to put hands behind his back, and continued to resist officers as they attempted to arrest him).

Plaintiff claims she was exercising her legal rights, not obstructing the police. She refused, however, to comply with an investigation the Officers had to perform, which went beyond asserting her rights. *See* GA.

CODE ANN. § 17-4-20.1(c). Beyond determining the involvement of the injured child, the Officers had an obligation to attempt to get the names of the parties involved and their relationship with each other, the type and extent of the abuse, and other details. *Id.* Plaintiff's refusal to provide even identifying information obstructed the Officers from completing the report. (Dkt. 52 at 25:25–26:1.) What is more, the Officers found her behavior suspicious and had reason to fear the primary aggressor was hiding in the apartment. A reasonable officer in the same circumstances and possessing the same knowledge as these Officer *could* have believed that probable cause existed to arrest Plaintiff for obstruction. The Officers are entitled to qualified immunity on the false arrest claim.

## 2. Clearly Established Law

Even if Plaintiff could show the Officers violated her rights by arresting her, she fails to meet her burden of showing they violated clearly established law. The core question on this prong of the qualified immunity analysis is "whether it was already clearly established, as a matter of law, that at the time of [the plaintiff's] arrest, an objective officer could not have concluded reasonably that probable cause existed

to arrest [the plaintiff] *under the particular circumstances [the d]efendants confronted.*"  *Gates*, 884 F.3d at 1303.

A constitutional right is only clearly established for qualified immunity purposes if "every reasonable official would have understood that what he is doing violates that right."  *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks omitted) (alteration adopted).  Put differently, "existing precedent must have placed the statutory or constitutional question beyond debate" to give the official fair warning that his conduct violated the law.  *Id.*; *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc) ("The critical inquiry is whether the law provided [defendant officers] with 'fair warning' that their conduct violated the Fourth Amendment.").  The Supreme Court has explained that the question is "whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted."  *See Saucier v. Katz*, 533 U.S. 194, 194–95 (2001).  "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate."  *Id.* at 202.

A plaintiff typically shows that a defendant's conduct violated clearly established law by pointing to "materially similar precedent from

the Supreme Court, [the Eleventh Circuit], or the highest state court in which the case arose." *Gates v. Kohkhar*, 884 F.3d 1290, 1296 (11th Cir. 2018). While the facts of the case need not be identical, "the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin,* 642 F.3d at 1013.

In *White v. Pauly*, the Supreme Court reiterated "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563 U.S. at 742). The Supreme Court held that to defeat a claim of qualified immunity, a plaintiff must "identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated the Fourth Amendment." *Id.* "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning to officers." *Id.* (internal quotation marks omitted). Instead, "the clearly established law must be 'particularized' to the facts of the case." *Id.* The Supreme Court has also explained that avoiding qualified immunity does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

Fair warning can also arise from two other sources. First, "[a]uthoritative judicial decisions may 'establish broad principles of law' that are clearly applicable to the conduct at issue." *Gates*, 884 F.3d at 1296 (quoting *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1209 (11th Cir. 2007)). Second, "it may be obvious from 'explicit statutory or constitutional statements' that conduct is unconstitutional." *Id.* (citing *Griffin Indus.*, 496 F.3d at 1208–09). Regardless of the method, the preexisting law must "make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010). In this way, qualified immunity does what it should: it "gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (internal quotation marks omitted) (alterations adopted).

Plaintiff cites two cases, *Harris v. State*, 726 S.E.2d 455 (Ga. Ct. App. 2012), and *Ballew v. State*, 538 S.E.2d 902 (Ga. Ct. App. 2000), to try to carry her burden of showing the law was clearly established. Neither do so.

To start, they are Georgia Court of Appeals cases and thus do not clearly establish the relevant law. *Harris* also involved very different facts from here. In that case, police went to the plaintiff's house to take a child into protective custody pursuant to a warrant. *Harris*, 726 S.E.2d at 457. The plaintiff refused to talk to the police, and the police arrested him for obstruction. *Id.* The officers admitted they arrested him simply because he would not let them in the house or answer questions about the child. *Id.* at 458. The Georgia court found those facts insufficient to constitute hindering, concluding a criminal violation requires something more. *Id.* at 458–59.

The officers in that case, however, were not responding to possible domestic violence. They had no statutory duty to complete a Family Violence Report and thus no obligation to conduct the investigation necessary to complete that form. The officers in *Harris* also had no reason to believe a child had been hurt or witnessed a domestic dispute. The Officers in this case, in contrast, had a duty to investigate. They told Plaintiff she was under investigation and that they needed to speak to KG. (Dkt. 58-1 ¶ 154.) Plaintiff responded by yelling at them, cursing at them, and preventing them from speaking with KG.

In *Harris*, the Georgia Court of Appeals approved its prior decisions upholding obstruction convictions when a person "remonstrated so loudly that [the person] interfered with an officer's interview of individuals who had reported a crime, despite the officer's instruction that she leave the scene." *Id*. (citing *Carter v. State*, 474 S.E.2d 228, 228 (Ga. Ct. App. 1996). Here, the Officers believed Plaintiff's yelling, cursing, and continued efforts to stop them from speaking with KG prevented them from completing their investigation. Far from providing the Officers clear notice that their conduct violated the law, *Harris* actually supports their contention that they had probable cause to believe she committed a crime.

*Ballew* does as well. In that case, police officers went to the plaintiff's house to question him about a fight. *Ballew*, 538 S.E.2d at 903. The plaintiff refused to answer their questions, and the police arrested him for obstruction. The Georgia Court of Appeals reversed his conviction, holding that "for speech to rise to the level of obstruction, it must be reasonably interpreted to be a threat of violence to the officer, which would amount to obstruction or hindrance." *Id.* at 903–04. The Georgia Court of Appeals cited its previous decision in *Woodward v. Gray,*

527 S.E.2d 595 (Ga. App. 2000), as precedent for its decision. The Georgia Court of Appeals has since recognized *Ballew* and *Woodward* as wrongly decided. In 2009, the Georgia Court stated

> "[w]e hereby disapprove the cases of *Woodward v. Gray,* 241 Ga.App. 847, 849(a), 527 S.E.2d 595 (2000); *Ballew v. State,* 245 Ga.App. 842, 843–844(1), 538 S.E.2d 902 (2000); and *Cooper v. State,* 270 Ga.App. 346, 347, 606 S.E.2d 869 (2004), to the extent that they imply that misdemeanor obstruction still requires proof of 'forcible resistance' or 'threat of violence.' The *Woodward* opinion improperly relied upon cases decided under the prior version of the statute, which had no application to the law in effect at the time the case was decided, and the other cases stem from *Woodward.*

*Stryker v.* State, 677 S.E.2d 680, 683 n.1 (Ga. App. 2009). It is hard to understand how *Ballew* could provide the Officers clear understanding that their conduct was wrong in 2014 when the Georgia Court of Appeals disavowed that opinion five years earlier.

Because Plaintiff presents no case law that would have put the Officers on notice that arresting Plaintiff for obstructing their investigation would violate her Constitutional rights, the Officers are entitled to qualified immunity.

## B. First Amendment Claims (Counts 1 & 2)

Plaintiff alleges in Counts 1 and 2 that the Officers arrested her simply because she cursed at them, a violation of her First Amendment

rights. The Court found above, however, the Officers had probable cause to arrest Plaintiff for obstruction and cruelty to a child in the third degree. The Officers did not arrest Plaintiff because of her speech, and her First Amendment claims thus fail. *See Redd v. City of Enterprise*, 140 F.3d 1378, 1383 (11th Cir. 1998) ("When a police officer has probable cause to believe that a person is committing a particular public offense, he is justified in arresting that person, even if the offender may be speaking at the same time.").

### C. Fourth Amendment Search and Seizure Claims (Count 3)

#### 1. Violation of a Constitutional Right

The Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton v. New York*, 445 U.S. 573, 576 (1980). The Officers had no warrant, and Officer Moore entered Plaintiff's home walking a few steps up the stairway before retreating when Plaintiff protested. Officer Madden then placed his foot in the doorway, preventing Plaintiff from closing it. *See McClish v. Nugent*, 483 F.3d 1231, 1242–43 (11th Cir. 2007) ("We have made clear that any physical invasion of the structure of the home, by even a fraction of an

inch was too much") (quoting *Kyllo v. United States*, 533 U.S. 27, 37 (2001) (alterations adopted)).

There are, however, exceptions that permit police to enter a home without a warrant. They may do so if exigent circumstances mandate immediate action. *United States v. Holloway*, 290 F.3d 1331, 1334 (11th Cir. 2002). A type of exigent circumstances is the emergency aid exception, under which the police can enter the home if someone in the residence is under the threat of imminent injury. *Michigan v. Fisher*, 558 U.S. 45, 47 (2009); *Hernandez v. Hansell*, No. 614CV1351, 2016 WL 8943279, at *5 (M.D. Fla. July 11, 2016), *aff'd*, 695 F. App'x 523 (11th Cir. 2017).

In evaluating whether exigent circumstances were present, a court considers that in emergency situations "the police must act quickly, based on hurried and incomplete information." *Holloway*, 290 F.3d at 1339. "Officers' actions, therefore, 'should be evaluated by reference to the circumstances then confronting the officer, including the need for a prompt assessment of sometimes ambiguous information concerning potentially serious consequences.' " *United States v. Duhon*, 503 F. App'x 874, 877 (11th Cir. 2013) (quoting *Holloway*, 290 F.3d at 1339). To invoke

this exception, "[o]fficers do not need ironclad proof of a likely serious, life-threatening injury . . . ." *Michigan v. Fisher*, 558 U.S. 45, 49 (2009) ("It does not meet the needs of law enforcement or the demands of public safety to require officers to walk away.").  And in considering an officer's actions, a court looks to whether "the circumstances, viewed *objectively*, justify the action." *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006) (citation and alterations omitted).  "The officer's subjective motivation is irrelevant." *Id.*

A report of a domestic argument — standing alone — "does not demonstrate exigent circumstances per se." *Storey v. Taylor*, 696 F.3d 987, 994 (10th Cir. 2012).  Instead, officers responding to a report of a domestic dispute must "point to *something* beyond the mere fact of an argument to demonstrate an 'objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others.' " *Id.* (quoting *United States v. Najar,* 451 F.3d 710, 718 (10th Cir. 2006).  The Officers here have done that.  The evidence obtained during their investigation provided a reasonable basis for believing KG and Plaintiff were under imminent threat of injury, creating exigent circumstances under which they could lawfully enter Plaintiff's home.

The Officers arrived knowing a domestic dispute had taken place. (Dkt. 58-1 ¶ 130.) They found a child, KG, crying in the parking lot with an abrasion on her face. (*Id.* ¶¶ 132, 149.) She had gone back into the apartment as Officers Madden and Moore were talking to Plaintiff. (*Id.* ¶ 149.) They knew that, following a domestic dispute, one party to the dispute might hide from police inside the residence. They knew Plaintiff had told the 911 operator that the man would not leave. And they had not yet located him. (*Id.* ¶¶ 37, 131.) And the Officers thought Plaintiff was acting suspiciously. (*Id.* ¶ 143.) These circumstances provided a reasonable basis to fear for Plaintiff's and KG's safety.

That Garcia was not actually in the house is irrelevant. The Court evaluates an officer's actions based on the situation confronting them at the time, not with 20/20 hindsight. *See Wayne v. United States*, 318 F.2d 205, 212 (D.C. Cir. 1963) ("When policemen, firemen or other public officers are confronted with evidence which would lead a prudent and reasonable official to see a need to act to protect life or property, they are authorized to act on that information, even if ultimately found erroneous."). The Officers' training made it reasonable for them to fear Garcia was in the house.

That Officer Madden testified that there were no exigent circumstances at the time of the arrest is also not determinative. (Dkt. 52 at 28:12–15.) Another officer, Officer Moore, who entered the apartment, testified that he was concerned for KG's safety. (Dkt. 53 at 32:15–19.) The Officers all received training on responding to domestic disputes, and this training instructed them to ensure that all parties in the domestic dispute were not in danger of physical harm. (Dkt. 58-1 ¶ 36.) And Officer Moore testified that as a police officer, he responded to multiple incidents where the aggressor hid inside the home. (Dkt. 51 at 28:1–6.) His experiences and his training led him to fear for KG's safety.

Besides, the question is not what the particular officers were thinking, but whether the objective circumstances justified the action. *See Stuart*, 547 U.S. at 404. And here, KG's safety justified the Officers first entering the house and keeping the door open.

### 2.    Clearly Established Law

Plaintiff also fails to show the right that Defendants allegedly violated was clearly established at the time. Plaintiff defines the infraction as "a warrantless investigatory detention[ ] of people standing

in their apartment doorway."  Plaintiff cites one case, *Moore v. Pederson*, 806 F.3d 1036 (11th Cir. 2015), to show this right was clearly established. In *Moore*, a neighbor called the police to report a nonviolent argument between a man and a woman.  *Id.* at 1039–40.  The police knocked on the man's door, and when the man opened the door, the police saw two women in the room, one of whom appeared angry.  *Id.* at 1045.  The court noted that "[n]o one appeared injured in any way."  *Id.*  In contrast, the Officers knew a child had been injured and that Plaintiff had called asking for the police to "please get here" because the man with whom she was fighting would not leave.  (Dkt. 58-1 ¶ 120.)  The differences between *Moore* and the case here are clear.  *Moore* does not help Plaintiff, and the Officers are entitled to qualified immunity on her search without a warrant claim.

## B.    State-law Claims & Official Immunity (Counts 4, 6, 7)

Under Georgia law, government officials "are entitled to official immunity from suit and liability unless they '. . . act with actual malice or an intent to injure when performing a discretionary act.'"  *Speight v. Griggs*, 579 F. App'x 757, 759 (11th Cir. 2014) (citing *Roper v. Greenway*, 751 S.E.2d 351, 352 (Ga. 2013) and GA. CONST. art. I, § II, par. IX(d)).

The Officers were performing a discretionary task when they arrested Plaintiff. The only question, then, is whether Defendants acted with actual malice or actual intent to injure. The Supreme Court of Georgia has defined actual malice in the context of official immunity to mean a "deliberate intention to do a wrongful act" or "an actual intent to cause injury." *Adams v. Hazelwood*, 520 S.E.2d 896, 898 (Ga. 1999). Similarly, actual intent to injure requires "actual intent to cause harm to the plaintiff," not merely the intent to do an act that causes harm. *Gates*, 884 F.3d at 1304.

The undisputed facts show the Officers had probable cause to arrest Plaintiff for obstruction and cruelty to child third degree. Since the police had probable cause, or at least arguable probable cause, to arrest Plaintiff, the Officers are entitled to official immunity. *See Reed v. DeKalb Cty.*, 589 S.E.2d 584, 587 (Ga. Ct. App. 2003) ("Even when an arresting officer operates on a mistaken belief that an arrest is appropriate, official immunity still applies.").

Plaintiff cites several cases that restrict police officers from arresting citizens for only challenging the police's authority. *See City of Houston v. Hill*, 482 U.S. 451 (1987); *Johnson v. Campbell*, 332 F.3d 199

(3d Cir. 2003); *Sheth v. Webster*, 145 F.3d 1231 (11th Cir. 1998); *Skop v. City of Atlanta (Ga),* 485 F.3d 1130 (11th Cir. 2007). In each of these cases, however, the police officers arrested plaintiffs for their speech alone. For instance, in *Hill*, the Supreme Court invalidated an obstruction ordinance because "the enforceable portion of [that] ordinance [dealt] not with core criminal conduct, but with speech." 482 U.S. at 460. In *Johnson*, the Court found the police officer's conduct unconstitutional because he arrested the plaintiff simply because of the plaintiff's speech. 332 F.3d at 212 ("It is clear from [the police officer's] unequivocal and uncontroverted testimony at trial that [the plaintiff] was arrested only because of his speech."). And in *Sheth*, the police officer arrested the plaintiff simply for saying she knew her rights. 145 F.3d at 1235. By contrast, the Officers here had an affirmative duty to investigate domestic violence. Plaintiff obstructed the Officers' performance of that duty, not solely through her speech, but through trying to stop the Officers from talking to KG.

The Officers did not have actual malice or an actual intent to injure. They are thus entitled to official immunity on the false arrest, false imprisonment, and malicious prosecution claims.

## C. Motion to File Under Seal (Dkt. 49)

Rule 26(c) of the Federal Rules of Civil Procedure provides that a court, for good cause, may issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. FED. R. CIV. P. 26(c)(1). Courts determine whether there is good cause by balancing the public's "interest in obtaining access" against the "party's interest in keeping the information confidential." *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001). The First Amendment to the United States Constitution also provides a qualified right of access to trial proceedings that "requires the court to balance the respective interests of the parties." *Id.* at 1313. "Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but [is] also the public's case." *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992). Unless a party can show "extraordinary circumstances," a court file must remain accessible to the public. *See id.*

The exhibits Defendants seek to seal contain audio and video depictions and references of a minor child, KG. Another exhibit Defendants seek to seal contains medical records. The Court finds the

public right of access is outweighed by legitimate privacy interests of personal health information and of the child. The Court grants Defendants' motion to seal (Dkt. 49).

### D. In Forma Pauperis

Defendant seeks dismissal of this case on the allegation that Plaintiff misrepresented her financial status to claim in forma pauperis status. Based on the Court's findings, this claim is now moot.

## IV. Conclusion

The Court **GRANTS** Defendants' Motion for Summary Judgment (Dkt. 47), **GRANTS** Defendants' Motion to Seal (Dkt. 49), and **DENIES** Plaintiff's Motion for Summary Judgment (Dkt. 50). The Court **DISMISSES** this case with prejudice.

**SO ORDERED** this 25th day of October, 2019.



MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE